In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00084-CV
_____

STEPHEN HARTMAN, Appellant

V.

LAYNE WALKER, RIFE KIMLER, JOEL VAZQUEZ,
AND JAMES MAKIN, Appellees

_____

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,246

_____

## MEMORANDUM OPINION

Stephen Hartman appeals from a judgment granting a motion for summary judgment filed by Layne Walker, the last of twenty-six defendants that Hartman sued on claims of malicious prosecution and civil conspiracy. Hartman's claims arose from his arrest, prosecution, and later dismissal of the charge the State brought against him for allegedly violating a statute designed to prohibit the disruption by an individual of

1

an official proceeding.[1] As to Hartman, the State alleged that in May 2013 and when Judge Walker was conducting a hearing on a defendant's plea, Hartman entered the courtroom of the 252nd District Court, told a deputy sheriff who was assigned to the courtroom as a bailiff that he (Hartman) was there to serve Judge Walker with a summons, the deputy sheriff told Hartman to leave, and the proceedings were disrupted by "noise" when Hartman's refused to comply.

Hartman raises two appellate issues in his brief. In his first issue, Hartman argues that the trial court's judgment should be reversed for three reasons: (1) a prior decision of this Court in a prior appeal requires the trial court's ruling to be reversed because this Court in the prior appeal upheld the trial court's denial of Walker's motion to dismiss Hartman's claims against Judge Walker under the Texas Citizens Participation Act;[2] (2) the trial court erred in overruling his objections to

---

[1]Tex. Penal Code Ann. § 38.13. Section 38.13 is titled "Hindering Proceedings by Disorderly Conduct," and it provides that a person commits an offense if he intentionally or recklessly "hinders an official proceeding by noise or violent or tumultuous behavior or disturbance and continues after explicit official request to desist." *Id.*

[2]*Walker v. Hartman*, 516 S.W.3d 71, 84 (Tex. App.—Beaumont 2017, no pet.) (*Walker I*) ("Having determined that Hartman has met his burden for each element of his claim for malicious prosecution and civil

several critical exhibits that Walker relied on to support his motion for summary judgment; and (3) the evidence Walker relied on to support his motion failed to conclusively disprove three of the elements of Hartman's malicious prosecution claims, which Walker challenged in his motion, and did not conclusively establish that Walker wasn't a party to a civil conspiracy that was formed to fabricate false evidence to support charging Hartman with a crime.

In Hartman's second issue, he argues the motions for summary judgment filed by Rife Kimler, Joel Vazquez, and James Makin should be reversed because the affidavits attached to their respective motions are defective, and the trial court erred in considering them over his objections. Hartman also argues that even if, when considered, the information the attorneys included in their affidavits is insufficient to support the trial court's ruling granting their traditional motions for summary judgment.

---

conspiracy and that Walker did not demonstrate by a preponderance of the evidence each essential element of a valid defense to these claims, we affirm the trial court's order denying Walker's motion to dismiss under the TCPA.").

The trial court granted the motions of these three defendants in separate interlocutory orders, signed two months before it signed the final judgment. After the trial court signed these three orders, Hartman filed his Sixth Amended Original Petition. In it, Hartman named only Walker as a defendant in his suit.

As to Hartman's first issue, we conclude Hartman's arguments lack merit. As to Hartman's second issue, we hold that by amending his petition, Hartman voluntarily dismissed Kimler, Vazquez, and Makin from the suit. As a result, he cannot now show that the trial court's final judgment ordering Hartman to take nothing against Judge Walker and disposing "of all parties and all claims" is improper.[3]

For the reasons fully explained below, we will affirm.

## Background

In May 2013, Stephen Hartman—a licensed process server—came into the 252nd District Courtroom to serve Judge Walker with a summons to appear before a federal court as a witness while he was hearing a defendant's plea. When Hartman approached the rail (the bar that separates the public area of the courtroom where the attorneys, the

---

[3]Tex. R. App. P. 44.1(a).

parties, and court personnel are allowed to enter), Deputy Sheriff Steven Broussard approached him to let him know that he could not go any farther and could not approach the judge. Still, Hartman told the deputy he disagreed, as he thought he had the right to carry out his duties as a process server and execute service of the summons. When Hartman insisted that he had the right to serve the summons, Deputy Broussard ordered Hartman to step outside. Hartman refused.

Deputy Broussard responded by arresting Hartman, and with the assistance of some of the other deputies serving as bailiffs that day in the courtroom, Hartman was handcuffed and removed from the room. Of course, when that was going on at the rail, the hearing that Judge Walker was conducting came to a stop.[4] Before Hartman was taken to jail, Judge Walker came into the room where Hartman was being held and allowed Hartman to serve him with the summons, which required the judge to appear as a witness in federal court.

---

[4]Hartman disputes that he went beyond the courtroom's rail. Yet no dispute exists over whether Hartman refused to comply with Deputy Broussard's order to step outside the courtroom before Deputy Broussard placed Hartman under arrest.

That same day, Deputy Broussard filed a probable cause affidavit to support Hartman's arrest. The probable cause affidavit contains Deputy Broussard's explanation about why he believed a good-faith basis existed to arrest Broussard based on what Broussard said occurred in the courtroom that day. Within a month, detectives with the Jefferson County Sherriff's Department obtained statements from the lawyers and other individuals in Judge Walker's courtroom about Hartman's arrest on May 28, 2013. The lawyers who were in the courtroom that day who gave statements included Makin, Vazquez, and Kimler. They were in the courtroom that day representing defendants, whose cases were on Judge Walker's docket.

In June 2013, Judge Lupe Flores, the judge of Jefferson County Court at Law Number 2, appointed Joe Alford as the acting district attorney, known as the District Attorney Pro Tem, to perform the duties of the Jefferson County District Attorney's Office in Hartman's case. Alford's duties necessarily included deciding whether to charge Hartman with an offense.[5] In July 2013, Alford charged Hartman by information

---

[5]*Hartman v. Estate of Alford*, No. 09-19-00051-CV, 2019 Tex. App. LEXIS 8467, at *1 (Tex. App.—Beaumont Sept. 19, 2019, pet. denied)

6

with "Hindering a Proceeding by Disorderly Conduct," a misdemeanor offense under Texas law.[6] Before the case went to trial, however, the trial court dismissed the charge against Hartman. The charge was dismissed because Alford's oath of office as the acting district attorney wasn't filed with the trial court, as required by law.[7]

In March 2016, Hartman filed a civil suit for damages against Judge Layne Walker and twenty-five other defendants. In his suit, Hartman alleged the defendants were all part of a big civil conspiracy to have him maliciously prosecuted for a crime he didn't commit based on fabricated evidence and conduct that didn't justify his arrest.[8] In the past seven years, the trial court has disposed of all of Hartman's claim, most

---

(mem. op.). The investigation was conducted by the detectives employed by the Jefferson County Sheriff's Office, employed by Jefferson County, and investigators who, in 2013, were employed by Jefferson County but were assigned jobs in the District Attorney's Office.

[6]*See* Tex. Code Crim. Proc. Ann. art. 21.20; Tex. Penal Code Ann. § 38.13.

[7]*See* Tex. Code Crim. Proc. Ann. art. 2.07 (Attorney Pro Tem); *Estate of Alford*, No. 09-19-00051-CV, 2019 Tex. App. LEXIS 8467, at *2 n.3 (observing that while the case against Hartman was dismissed because Alford's oath of office was not filed, the defect in procedure created by that procedural defect isn't sufficient to defeat a prosecutorial immunity claim).

[8]Before bringing his claims in state court, Hartman sued the defendants in federal court. In March 2016, the federal suit was dismissed for lack of jurisdiction, and then Hartman filed it in state court.

of them based on pleas to the jurisdiction filed by defendants employed by Jefferson County.[9] We affirmed the trial court's rulings dismissing all other defendants in three separate opinions, which we note below.[10]

---

[9]A plea to the jurisdiction is a dilatory plea used to defeat a plaintiff's cause of action without regard to whether the plaintiff's claims have merit, as the plea requires the court to decide whether it has subject matter jurisdiction over the plaintiff's case. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

[10]*Hartman v. Barker*, No. 09-19-00052-CV, 2020 Tex. App. LEXIS 1436, at *18 (Tex. App.—Beaumont Feb. 20, 2020, pet. denied) (affirming trial court's ruling granting plea to the jurisdiction filed by the bailiff, various sheriff's department employees, members of Judge Walker's courtroom staff, Jefferson County's District Attorney, and several Jefferson County assistant district attorneys, explaining that because the affidavits these witnesses provided after Hartman's arrest were "prepared and presented in the investigation" of the charges brought against Hartman, they "were made in the course of a judicial proceeding[,]" and that for that reason the employees were "covered by absolute witness immunity" from Hartman's suit); *Hartman v. Broussard*, No. 09-19-00053-CV, 2020 Tex. App. LEXIS 1062, at *3, *10, *19, *21 (Tex. App.—Beaumont Feb. 6, 2020, no pet. h.) (mem. op.) (affirming trial court's order dismissing Hartman's claims against Deputy Sheriff Steven Broussard, the officer who acted as the bailiff in the 252nd District courtroom and who arrested Hartman, concluding that by suing the County and Broussard in federal court, Hartman triggered the election of remedies provision of the Tort Claims Act, Texas Civil Practice and Remedies Code section 101.016(a)); *Hartman v. Estate of Alford*, No. 09-19-00051-CV, 2019 Tex. App. LEXIS 8467, at *8 (relying on the doctrine of absolute prosecutorial immunity, we affirmed the trial court's order dismissing Hartman's suit against Joe Alford, the attorney appointed to act as the district attorney to prosecute Hartman's case in Hartman's appeal from the trial court's ruling granting Alford's plea to the jurisdiction).

8

By July 2020, only five defendants remained before the court in Hartman's case: (1) Judge Walker; (2) Arthur Louis Jr. (a Jefferson County deputy sheriff who was in Judge Walker's courtroom but who was not included with the other Jefferson County employees dismissed in the trial court's order granting the pleas to the jurisdiction); (3) James Makin; (4) Joel Vazquez; and (5) Rife Kimler.

By January 2021, Makin, Vazquez, and Kimler filed traditional motions for summary judgment, arguing that as witnesses in a criminal investigation, they enjoyed absolute-witness immunity from the Hartman's claims alleging they provided false statements to the detectives who interviewed them about Hartman's arrest. In February 2021, the trial court granted their motions and ordered the Hartman's claims against the attorney dismissed, with prejudice. But at that point, the orders granting the motions filed by the attorneys were interlocutory, not final.

Seven weeks later, Hartman filed his Sixth Amended Petition and named Judge Walker as the sole defendant against whom he was seeking to recover damages in the suit. In his Sixth Amended Petition, his live pleading for the purpose of this appeal, Hartman made just two claims:

(1) a claim for malicious prosecution, and (2) a claim for what Hartman refers to in his brief as "a civil conspiracy to maliciously prosecute Hartman."

The court granted Judge Walker's traditional motion for summary judgment on Hartman's claims in April 2021. The judgment, which is styled "Final Summary Judgment," recites:

> Plaintiff Stephen Hartman shall take nothing from Defendant Layne Walker.

> This order finally disposes of all parties and all claims and is appealable.

After the trial court signed the judgment, Hartman appealed. As previously mentioned, he argues: (1) this court is bound by its ruling upholding the trial court's ruling in a prior appeal, *Walker v. Hartman*, 516 S.W.3d 71, 84 (Tex. App.—Beaumont 2017, no pet.), a case we will refer to as *Walker I*; (2) the trial court erred in overruling his objections to several critical exhibits that Walker relied on to support his motion for summary judgment; and (3) the evidence Walker relied on to support his motion failed to conclusively prove that Walker didn't commit the three elements of the tort of malicious prosecution that were challenged in Walker's motion, and Walker did not conclusively establish that Walker

wasn't a party to a civil conspiracy formed to fabricate false evidence to support charging Hartman with a crime.

In Hartman's second issue, he argues the trial court erred in granting the motions for summary judgment filed by Makin, Vazquez, and Kimler. According to Hartman, the trial court erred in extending an absolute-witness-immunity privilege to these three defendants because they gave their statements to police before Alford formally brought charges against Hartman in July 2013, which is when Alford formally charged Hartman by information with disrupting the proceedings in Judge Walker's court.

## Standard of Review

We review summary judgments de novo.[11] "To prevail on a traditional motion for summary judgment, the movant must show no material fact issues exist and that it is entitled to judgment as a matter of law."[12] We take as true all evidence favorable to the party that opposes the motion, and we indulge every reasonable inference and resolve any

---

[11]*Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022).

[12]*Id.*, Tex. R. Civ. P. 166a(c).

11

doubts in favor of that party.[13] Of the various arguments the respective defendants raised in their motions for summary judgments, the trial court did not specify the precise argument it relied on when it granted the motions. For that reason, we may affirm the trial court's rulings on any ground on which the trial court's rulings have merit.[14]

When a party that moves for summary judgment attaches summary-judgment proof to its motion that is sufficient to establish that no genuine issue of material fact exist on at least one element of the plaintiff's claim on which it is seeking to obtain a summary judgment, "the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment" on that claim.[15] Evidence raises a genuine issue of material fact when reasonable and fair-minded jurors could differ in their conclusions after considering the summary-judgment evidence properly considered in the hearing.[16]

---

[13]*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

[14]*Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

[15]*Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

[16]*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## Analysis

I. Issue One

### A. *Did the trial court err in rejecting Hartman's law-of-the case argument?*

Hartman contends that our holding in *Walker I*, a prior interlocutory appeal in which we upheld the trial court's ruling denying Judge Walker's TCPA motion to dismiss, operates as the law of the case, and requires the Court to reverse the trial court's ruling granting Walker's motion for summary judgment even the trial court's ruling at issue here is not based on the same record we had before us when we decided *Walker I*.[17] Because the appeal in *Walker I* and that appeal before us here are based on different evidentiary records, we disagree with Hartman that the law-of-the-case doctrine applies to this appeal.

To evaluate Hartman's law-of-the-case argument, we must first examine what the then existing language of TCPA statute allowed trial courts to consider in ruling on TCPA motions to dismiss. In 2016, which is when Judge Walker filed his TCPA motion to dismiss, the TCPA statute limited the trial court to deciding such motions to the pleadings

---

[17]*Walker I*, 516 S.W.3d at 84.

13

and affidavits filed in support of or in opposition to the TCPA motion.[18]

The version of the TCPA that applies to Judge Walker's the TCPA motion Judge Walker filed in 2016 (and our review of the trial court's ruling on it) provided:

> In determining whether the legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability and defense is based.[19]

When we affirmed the trial court's ruling in *Walker I* and upheld the trial court's ruling, we noted: "Our review of the appellate record does not reveal any affidavits from Walker."[20] And in 2016, the only "evidence" Judge Walker would have been allowed to file, had he filed any evidence (and he did not) would have been affidavits to support his TCPA motion to dismiss.[21]

---

[18]Citizens Participation Act, 82nd Leg., R.S., ch. 27, § 27.006(a), 2011 Tex. Gen. Laws 960, 962 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a)) (In 2019, the legislature amended section 27.006 to allow trial courts to consider affidavits, pleadings, and the evidence a court may consider under Texas Rule of Civil Procedure 166a, the rule that applies to motions for summary judgment.).

[19]*Id.*

[20]*Walker I,* 516 S.W.3d at 77.

[21]Citizens Participation Act, § 27.006(a), 2011 Tex. Gen. Laws at 962.

In *Walker I*, the absence of any affidavits contradicting the factual allegations in Hartman's pleadings proved consequential, since once Hartman's pleadings established the TCPA applied to his claims the burden of proof shifted to Walker to disprove the allegations in Hartman's pleadings.[22] Yet because Judge Walker didn't file affidavits to contradict the allegations in Hartman's pleadings to support his TCPA motion to dismiss, we were required in *Walker I* to accept Hartman's pleadings as *evidence* when reviewing whether the trial court erred in denying Judge Walker motion under the then exiting requirements of the TCPA.[23]

That same problem does not exist here. On remand, Judge Walker developed an evidentiary record to support his motion for summary judgment. When boiled down, Walker's summary-judgment evidence

---

[22]*See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (explaining that under the TCPA, the trial court must consider pleadings whether they are formally offered as evidence or not); *Walker I*, 516 S.W.3d at 79 (noting that under the rules that apply to TCPA dismissal hearings, pleadings are considered "as evidence" under the Act).

[23]*Walker I*, 516 S.W.3d at 81-82 (concluding that Hartman's live pleadings and affidavits, "which we are required to consider as evidence under the TCPA, alleged facts if neither rebutted nor contradicted, demonstrate the elements of causes of action for malicious prosecution and civil conspiracy as to Walker"); *see also* Citizens Participation Act, § 27.006(a), 2011 Tex. Gen. Laws at 962.

supports his claim that he was not involved in the decisions that led to Hartman's prosecution for disrupting the proceedings in court or in any alleged conspiracy to fabricate evidence to support charging Hartman with a crime.

After we decided *Walker I*, the parties continued to litigate this case for another four years in the trial court before Judge Walker moved for summary judgment. Now, the appellate record includes the types of summary-judgment evidence parties are allowed to file under Rule of Civil Procedure 166a, evidence the parties were not allowed to file to support a TCPA motion under the version of the TCPA that applied when the trial court ruled on Judge Walker's TCPA motion to dismiss.[24]

Turning to the summary-judgment evidence, the appellate record shows that Judge Walker attached ten exhibits to his motion for summary judgment. None of these exhibits were attached to Judge Walker's TCPA motion to dismiss in 2016.[25] The exhibits include Deputy

---

[24]*Compare* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a), *with* Citizens Participation Act § 27.006(a), 2011 Tex. Gen. Laws at 962.

[25]Judge Walker supported his motion for summary judgment with these ten exhibits: (1) a video of the proceedings in Judge Walker's courtroom on May 28th; (2) a copy of the probable cause affidavit signed by Deputy Broussard supporting Hartman's arrest; (3) a copy of the

16

Steven Broussard's probable cause affidavit, the deputy who arrested Hartman. Deputy Broussard's probable cause affidavit explains why he believed he had probable cause to arrest Hartman for disturbing the proceedings, a defendant's plea. The deputy's affidavit explains that Hartman was arrest after refusing to leave the courtroom and the deputy and Hartman began arguing about whether the deputy had the right to require Hartman to leave after the deputy told him he could not serve Judge Walker with a summons while the judge was conducting a hearing and on the bench. Nothing in the deputy's affidavit reflects that Judge Walker told Deputy Broussard before or during the hearing to place Hartman under arrest. What's more, nothing in Deputy Broussard's affidavit shows that Judge Walker met with, conspired with, or was involved in the alleged mishandling by police of any evidence that police gathered following Hartman's arrest.

---

Information Joe Alford signed, filed in County Court at Law Number Two, charging Hartman with Disorderly Conduct; (4) a copy of Hartman's public reprimand, issued by the Process Server Review Board; (5) a copy of the decision of the Judicial Branch Certification Commission sustaining Hartman's public remand; (6) an affidavit from Kimler; (7) an affidavit from Makin; (8) an affidavit from Vazquez; (9) the unsworn declaration of Layne Walker; and (10) the unsworn declaration of Jeffrey Dorrell, verifying exhibits 2, 3, 4, and 5 are true and correct.

Besides Deputy Broussard's probable cause affidavit, Judge Walker attached his unsworn declaration to his motion. It provides additional support for Judge Walker's claim that he didn't participate in a malicious prosecution or conspiracy to have Hartman prosecuted for disrupting the proceedings in the 252nd District Court.[26] In his Unsworn Declaration, which Judge Walker signed under penalty of perjury, he declared that he was never asked to provide any information or testimony about Hartman after Hartman's arrest. Among other things, Walker states in his Unsworn Declarations that:

- . . . As part of the investigation of Steven Hartman's courtroom conduct on May 28, 2013, I was never asked to provide information or testimony regarding Hartman's actions. Therefore, I never provided any information or testimony regarding Hartman's actions on May 28, 2013,— true, false, or otherwise.

- I never asked, instructed, or suggested that any witness to Steven Hartman's May 28, 2013, courtroom conduct give any particular testimony regarding Hartman's conduct[;] and

- I never met with any witness(es) to Steven Hartman's May 28, 2013 conduct, courtroom conduct in court on May 28th] to discuss his or their testimony regarding Hartman's conduct.

---

[26]*See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a) (with exceptions that are not relevant here, allowing unsworn declarations to "be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute, or required by a rule, order, or requirement adopted as provided by law").

18

Simply put, a TCPA motion to dismiss is a procedural device authorizing a party to seek an early dismissal of certain claims subject to the Act within sixty days of serving the defendant with the motion.[27] It allows a party to challenge the plaintiff's pleadings by alleging they fail to plead sufficient facts to proceed on the certain claims, like those subject to the First Amendment, that are to the protection offered through an early dismissal under the Act.[28] Given the early stage of the proceedings at which TCPA motions are filed, the evidence available to the trial court is rarely (if ever) very fully developed.

Unlike the record before us in *Walker I*, the record now before us was developed after years of litigation where the parties had a full opportunity to determine whether there was any substance whatsoever to Hartman's claims. And unlike the record in *Walker I*, the record here includes summary-judgment evidence, which consists of exhibits support Judge Walker's claim he was not involved in the investigation of Hartman's case or the Joe Alford's decision to charge Hartman with a crime. Because Walker's TCPA motion to dismiss and his traditional

---

[27]Tex. Civ. Prac. & Rem. Code Ann. § 27.003(b).
[28]*Id*.

motion for summary judgment are not based on the same evidentiary records, we conclude the trial court did not err in rejecting Hartman's law-of-the-case argument and in deciding Judge Walker's motion on its merits.[29]

> B. Did the trial court err in overruling Hartman's objections to Walker's summary-judgment evidence?

Next, Hartman argues that based on the evidence supporting Judge Walker's motion for summary judgment, the burden of proof never shifted to him to present evidence to establish that issues of material fact existed on the elements of his malicious prosecution and civil conspiracy claims that were challenged in Judge Walker's motion. Hartman's argument that the burden never shifted to him relies on his claim that the trial court erred in overruling seven of his objections to Judge

---

[29]See Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986) (explaining that the law-of-the-case doctrine doesn't apply when "the issues or facts have sufficiently changed"); Glenn v. Prestegord, 456 S.W.2d 901, 902 (Tex. 1970) (rejecting argument that the Court's opinion in a former appeal governed the outcome of the current appeal when different standards applied in the trial court as to which of the parties bore the burden of proof); Governing Bd. v. Pannill, 659 S.W.2d 670, 681 (Tex. App.—Beaumont 1983, writ ref'd n.r.e.) (rejecting argument that the trial court erred in rejecting a law-of-the-case argument, which depended on a prior opinion of the court of appeals, when the evidentiary record on which the later appeal was based differed materially from the evidentiary record in the prior appeal).

Walker's summary-judgment evidence—his objections to Exhibits 2 and Exhibits 4 through 9. We disagree the trial court erred in overruling Hartman's objections to these exhibits.

The substance of the complaints Hartman raises to Walker's exhibits address the trial court's rulings on Hartman's objections to Exhibit 2 (the Probable Cause Affidavit signed by Deputy Broussard), Exhibit 6 (the affidavit signed by Kimler), Exhibit 7 (the affidavit signed by Makin), and Exhibit 8 (the affidavit signed by Joel Vazquez). In the trial court, Hartman argued these exhibits were inadmissible because other summary-judgment evidence contradicts the information these four exhibits contain.

Hartman also complains the trial court erred in admitting Exhibits 4 and 5 because they weren't relevant. Exhibit 4 is the reprimand Hartman received from the Process Server Review Board, which found Hartman "disrupted the proceedings in the 258th District Court on May 28, 2013." Exhibit 5 is the Judicial Branch Certification Commission's ruling sustaining that finding. According to Hartman, Exhibits 4 and 5 aren't relevant to the issue of whether he was subjected to a prosecution for "disturbing a court proceeding via noise." Last, Hartman objected to

Exhibit 9—Judge Walker's Unsworn Declaration—arguing that "as unsworn testimony" it was "conclusory and self-serving."

Generally, reviewing courts defer to "a trial court's decision to exclude or admit summary judgment evidence."[30] As to the exhibits 2, 6, 7, and 8, the affidavits attached to Judge Walker's motion, Rule 166a(f) of the Texas Rules of Civil Procedure requires supporting and opposing affidavits used in summary-judgment proceedings to "set forth such facts as would be admissible in evidence, and [to] show the affiant is competent to testify to the matters stated therein."[31] In a trial, evidence relevant to an issue is generally admissible unless the United States and Texas Constitutions, a statute, or a rule of evidence otherwise provides.[32]

As to Exhibits 2, 6, 7, and 8, Hartman doesn't rely on any constitutional argument, a statute, or a rule of evidence in his brief to support his argument that these affidavits aren't relevant or were inadmissible; instead, he argues these four exhibits were inadmissible simply because other evidence in the record contradicts what's in them.

---

[30]*Lujan,* 555 S.W.3d at 85.
[31]Tex. R. Civ. P. 166a(f).
[32]Tex. R. Evid. 402.

We disagree the six affidavits were inadmissible. First, they were all relevant to the issues raised in Walker's motion for summary judgment, as Walker challenged three elements of Hartman's malicious prosecution claim: (1) did Walker procure Hartman's prosecution; (2) was Hartman innocent of the charge; and (3) did Walker lack probable cause to initiate or procure the prosecution that resulted from his arrest. Thus, Walker's motion made the issues of whether he procured Walker's prosecution and whether probable cause existed to justify Hartman's prosecution relevant to the trial court's resolution of Walker's motion.

Under the Rule of Evidence 401:

Evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b) the fact is of consequence in determining the action.[33]

Broussard, Makin, Vasquez, and Kimler were all witnesses to Hartman's conduct in the 252nd District Court in May 2013. The fact that there is other summary-judgment evidence that conflicts with Walker's doesn't make Judge Walker's summary-judgment evidence inadmissible. For instance, even were it true that the video captured on

---

[33]Tex. R. Evid. 401.

the pen recording that Hartman carried into the courtroom with him that day shows he never went beyond that rail separating the gallery of the courtroom from the area reserved for attorneys, which is the reason Hartman argues the affidavits of the attorneys are unreliable, discrepancies in summary-judgment evidence is a matter that concerns the weight the evidence is given, not its admissibility.[34] We further note that when Hartman was in the trial court, he did not argue the trial court should exclude any evidence under the "sham affidavit" rule, and he hasn't made that argument here.[35] Because the affidavits were from eyewitness and were relevant to the issues raised in Judge Walker's motion, we conclude Hartman's argument claiming the exhibits shouldn't have been admitted because there is other contradictory evidence in the record lacks merit.

---

[34]*See Lujan*, 555 S.W.3d at 85 (explaining that just because there are variances between the same witness's sworn accounts, the fact there are variations don't necessarily justify a court's exclusion of a witness's affidavit as a sham); *Valent v. Firstmark Credit Union*, No. 04-19-00687-CV, 2020 Tex. App. LEXIS 2185, at *7 (Tex. App.—San Antonio Mar. 11, 2020, no pet.) (holding that whether a business-records affidavit contained inaccurate information affected its weight, not its admissibility).

[35]*Lujan*, 555 S.W.3d at 85-90.

Next, Hartman argues the trial court erred in admitting Exhibits 4 and 5—the reprimand he received from the Process Server Review Board and the decision by the Judicial Branch Certification Commission affirming the reprimand—because those entities did "not find [Hartman] was reprimanded for disturbing a proceeding via noise." Hartman contends the reprimand isn't an adjudication in a court of law, and therefore it didn't have "a collateral estoppel or res judicata effect."

The Judicial Branch Certification Commission (JBCC) and Process Server Review Board were created by the legislature.[36] Thus, the letter from the Process Server Review Board informing Hartman of its findings from the hearing it conducted following its investigation into a complaint it received about disrupting the proceedings in the 252nd District Court is a fact of consequence in Hartman's case, as the finding reflects that a public body determined Hartman disrupted a court proceeding. The letter states:

> Based on the testimony and the evidence, the Board found that you a person certified by the Board to serve civil process statewide, disrupted the proceedings in the 252nd Criminal District Court of Jefferson County on May 28, 2013 by attempting to serve process on Judge Layne Walker while court was in session.

[36]Tex. Gov't Code Ann. §§ 152.051, 156.051(a).

25

We recognize the information charging Hartman with a criminal offense alleges he disputed the hearing by "noise," while the letter Hartman received from the Process Server Review Board doesn't specify the exact cause of the disturbance. But no matter the exact cause, the letter undercuts Hartman's claim that he didn't disrupt the proceedings and that he didn't cause the disturbance because it constitutes evidence that he is the person who disrupted the proceedings by attempting to serve process on Judge Walker while court was in session.

That's relevant because under the section 38.13 of the Penal Code, the statute that Hartman was charged with violating, noise isn't the only way someone may be charged with a violation. The hindering a proceeding by disorderly conduct statute may be violated in one of four ways, (1) "by noise[,]" by (2) "violen[ce,]" by (3) tumultuous behavior[,]" or by "disturbance[.]"[37] Furthermore, the State could have chosen to refile the information and allege that Hartman intentionally or recklessly hindered the hearing in Judge Walker's court by creating a "disturbance"

---

[37]Tex. Penal Code Ann. § 38.13.

when he refused to comply with Deputy Broussard's demand to leave the courtroom.[38]

Hartman's own affidavit acknowledges that he refused the deputy's demand to leave the room. When Hartman responded to Judge Walker's motion, he filed an affidavit in which he swore that when Deputy Broussard told him to "GET OUR OF HERE NOW, YOU NEED TO LEAVE NOW[,]" he told the deputy: "No sir. . . . I advised the sergeant that I was there to serve papers on the judge[.] . . . [T]he sergeant stated that at the time I was under arrest[.]" Thus, the record shows that Deputy Broussard arrested Hartman only after Hartman failed to comply with the deputy's instructions to leave the room.

Judge Walker's motion for summary judgment made the question of whether Hartman was innocent relevant, as his motion argued that Hartman couldn't establish that he was "innocent of the charge." Therefore, the letter from the Board and the JBCC ruling upholding it

---

[38]*See* Tex. Code Crim. Proc. Ann. art. 28.10 (Amendment of Indictment or Information); *Wilson v. State*, 504 S.W.3d 337 (Tex. App.—Beaumont 2016, no pet.) (in a criminal trespass case, holding the city-manager's warning to the defendant that he could not return to the city's community center was sufficient evidence to establish that when the defendant returned to the community center, he didn't have the city's permission to be there).

were relevant to a fact of consequence in the dispute. We conclude Exhibits 4 and 5 were relevant (but not conclusive) on the Judge Walker's claim that Hartman could not establish he was innocent of having disrupted the hearing Judge Walker was conducting in 2013.[39] State another way, whether noise or whether something else hindered the proceeding are matters that concern the weight to assign Exhibits 4 and 5, they do not make the exhibits irrelevant and inadmissible as Hartman claims.[40]

Hartman also argues that since the proceedings before the Process Server Review Board and JBCC were merely administrative proceedings leading to his reprimand, not adjudications in a court of law, Exhibits 4 and 5 don't have a res judicata or collateral estoppel effect. From that argument, he concludes that makes the two exhibits inadmissible. Yet Judge Walker never argued that Hartman could not contest the findings in Exhibits 4 and 5, in other words Walker never claimed that the

---

[39]Tex. R. Evid. 401.

[40]Hartman did not argue in the trial court or here that the records from these two entities did not meet the hearsay exception that applies to public records, Texas Rule of Evidence 803(8). For that reason, we expressly do not address the admissibility of Exhibits 4 and 5 under Rule 803(8).

doctrines of collateral estoppel or res judicata applied to Hartman's claims based on Exhibit 4 or 5. Instead, Judge Walker relied on the exhibits to support his contention that they were evidence to show that probable cause to justify the Joe Alford's decision to charge Hartman with a crime.

Generally, public records or statements of a public office are admissible as an exception to the hearsay rule.[41] Walker's motion alleged Exhibits 4 and 5 were admissible under Rule of Evidence 803(8), the rule that creates an exception for public records. In the trial court, Hartman didn't claim Exhibits 4 and 5 weren't public records, and he didn't argue the exhibits were inadmissible under Rule 803(8).

Under Texas law, trial courts have broad discretion in deciding whether to admit or exclude evidence. Here, Judge Walker did not argue that res judicata or collateral estoppel prevented Hartman from proving that issues of material fact existed on the elements of his malicious prosecution and civil conspiracy claims. For that reason, we hold the trial court did not act without reference to the guiding rules and principles in

---

[41]Tex. R. Evid. 803(8).

overruling Hartman's res judicata and collateral estoppel objections to Exhibits 4 and 5.[42]

Turning to Exhibit 9 (Judge Walker's Unsworn Declaration), Hartman complains the trial court erred in considering it over his objections that it is "unsworn," "conclusory, and self-serving." Because Hartman attacks the substance of the statements in Judge Walker's Unsworn Declaration, we will quote the substance of it in its entirety:

> 1. My name is William Ralph Layne Walker. My date of birth is [    ], 1964. My address is 215 Orleans, Suit[e] 300, Beaumont, 77701. I am over the age of 18 and competent to make this declaration. I make this unsworn declaration pursuant to Tex. Civ. Prac. & Rem. Code. § 132.001 in lieu of an affidavit. I declare under the penalty of perjury that the facts stated herein are within my personal knowledge and are true and correct.
>
> 2. I am the sole remaining defendant in the above-entitled and numbered cause.
>
> 3. On May 28, 2013, I was the duly elected judge of the 252nd District Court of Jefferson County, Texas. On that day, while I was on the bench presiding, Stephen Hartman came to my courtroom to serve me with process in No. 1: 13-CV-00327; **Morrison v. Walker**; in the U.S. District Court for the Eastern District of Texas.
>
> 4. While I was hearing arguments in a motion to revoke probation, I heard loud talking and a commotion in the

---

[42] *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

30

courtroom. I diverted my attention from the attorneys arguing before me to see Jefferson County Sheriff's Deputy Steven Broussard confronting Stephen Hartman. After Hartman refused to leave the courtroom, I saw Deputy Ste[ph]en Broussard place Hartman under arrest and put Hartman in handcuffs.

5. On July 11, 2013, Hartman was charged by Criminal District Attorney Pro Tem Joe Alford with hindering an official proceeding by noise. As part of the investigation of Ste[ph]en Hartman's courtroom conduct on May 28, 2013, I was never asked to provide information or testimony regarding Hartman's actions. Therefore, I never provided any information or testimony regarding Hartman's actions on May 28, 2013—true, false, or otherwise.

6. I never asked, instructed, or suggested that any witness to Ste[ph]en Hartman's May 28, 2013, courtroom conduct give any particular testimony regarding Hartman's conduct.

7. I never met with any witness(es) to Ste[ph]en Hartman's May 28, 2013, courtroom conduct to discuss his (or their) testimony regarding Hartman's conduct.

_____/s/_____
William Ralph Layne Walker

First, we will address Hartman's argument that the instrument is unsworn. Hartman notes that while affidavits are mentioned in Rule 166a as the type of evidence that a party may use to support a motion for summary judgment, unsworn declarations are not.[43] Even though we

---

[43]*See* Tex. R. Civ. P. 166a.

concede that unsworn declarations aren't specifically mentioned in Rule 166a, we note that with limited exceptions that aren't applicable here, the legislature gave parties the right to use unsworn declarations rather than affidavits when affidavits are "required by statute or required by a rule, order, or requirement adopted as provided by law"[44] On appeal, Hartman doesn't argue that Judge Walker's declaration doesn't comply with the requirements of the unsworn-declaration statute, section 132.001.[45]

Second, we turn to Hartman's procedural objections to the form of Judge Walker's Unsworn Declaration. According to Hartman, Judge Walker's declaration wasn't signed before a notary, and it isn't notarized. Even so, unsworn declarations aren't required to be signed notaries.[46] Hartman's complaint alleging that Judge Walker's declaration is defective because it isn't notarized is frivolous.

---

[44]Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a).
[45]*Id*.
[46]*Id*. § 132.002(c) (providing that to qualify as an unsworn declaration, it must be "in writing" and "subscribed by the person making the declaration as true under the penalty of perjury" accompanied by a jurat that substantially complies with the form like the one provided as an example in the statute).

Last, Hartman complains that Judge Walker's declaration is conclusory and self-serving. Judge Walker's declaration reflect he was in the courtroom on May 28th. His statements are about what occurred in the courtroom that day and about what he knows about his participation, or lack thereof, in the investigation that followed. All these statements are based on Judge Walker's personal knowledge. Judge Walker describes what he was doing, what diverted his attention from the hearing he was conducting, and is statements reveal that he saw Deputy Broussard arrest Hartman "[a]fter Hartman refused to leave the courtroom." As to the investigation, Judge Walker would have known whether anyone contacted him following Hartman's arrest as it concerns the investigation conducted by authorities. Walker would have personal knowledge about whether he met with any witnesses about what occurred.

Under Rule 602 of the Rules of Evidence, a witness may testify to matters within their personal knowledge.[47] Hartman's argument that Judge Walker's declaration is conclusory and self-serving lacks merit, as his statements are based on his personal knowledge and were made

_____

[47]Tex. R. Evid. 601.

under penalty of perjury. For all these reasons, we hold the trial court did not err in overruling Hartman's objections to Exhibit 2 or to Exhibits 4 through 9.

*C. Is the evidence insufficient to support the trial court's ruling granting Judge Walker's motion granting summary judgment on Hartman's malicious prosecution and civil conspiracy claims?*

Turning first to Hartman malicious prosecution claim, he argues that the evidence Judge Walker relied on to support his motion his motion never shifted the burden of proof to Hartman to present summary-judgment evidence raising fact issues on the three elements of his malicious prosecution claim that were challenged in Judge Walker's motion. Hartman then argues that even if the burden shifted to him, the evidence he attached to his response established that genuine issues of material fact exist on the challenged elements of his malicious prosecution claim.

There are seven elements that a plaintiff must prove to prove a claim of malicious prosecution. Of these, Judge Walker's motion challenged three of the elements of a malicious prosecution claim, arguing that as a matter of law (1) Walker did not initiate or procure Hartman's prosecution, (2) Hartman was not innocent of committing an offense, and

(3) probable cause existed for the State to charge Hartman with a crime.[48]

Proving a claim of civil conspiracy requires proof the defendant, (1) together with at least one other person, (2) agreed on an object to be accomplished, (3) those involved in the conspiracy had a meeting of the minds on the object or course of action, (4) committed one or more unlawful, overt acts to accomplish the goal of the conspiracy, and (5) the plaintiff suffered damages as a result.[49]

We will first address Walker's argument that he didn't initiate or procure Hartman's prosecution before addressing his other arguments, as this is the argument that is dispositive of Hartman's claim for malicious prosecution. Judge Walker's summary-judgment evidence describes the circumstances leading to Hartman's arrest and prosecution.

---

[48]These are the four elements of Hartman's malicious prosecution claim that Walker's motion left unchallenged: (1) a criminal prosecution against Hartman was commenced; (2) the prosecution terminated in Hartman's favor; (3) the requirement that Hartman prove Walker acted with malice; and that (4) Hartman suffered damages from the resulting prosecution. *See Kroger v. Suberu*, 216 S.W.3d 788, 792 n.3 (Tex. 2006).

[49]*See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141-42 (Tex. 2019); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

He described his lack of involvement in the post-arrest investigation.[50] Deputy Broussard's affidavit shows that Deputy Broussard arrested Hartman after what had occurred just a few minutes before, during a time that Judge Walker was busy conducting a hearing on the bench. Deputy Broussard's probable cause affidavit reflects that he arrested Hartman without being ordered to do so by anyone. His affidavit doesn't reflect a role for Judge Walker in the decision he made in deciding whether to make the arrest. Nothing in the summary-judgment evidence links Judge Walker to the post-arrest investigation conducted by police or the investigators that worked for the District Attorney's Office. And nothing shows that Walker had any contact or role in Joe Alford's decision to charge Hartman about six weeks later with disrupting the proceedings in Judge Walker's court.

Since Deputy Broussard is the person who made the decision to arrest Hartman, and he stated his reasons for doing so in his probable cause affidavit, we quote it here:

---

[50]*Agar Corp.*, 580 S.W.3d at 141 (explaining that civil conspiracy is not an independent tort, but it exists so that on proving a conspiracy a plaintiff may obtain a remedy against any co-conspirators involved in the underlying tort).

On 05/28/2013 (Tuesday) I was performing duties as a bailiff +(sic) in the 252nd Criminal District Court (Judge Layne Walker). Located at 1001 Pearl Street, Beaumont, Jefferson County, Texas. 77701. I was wearing my distinctly marked Jefferson County Sheriff's Office uniform. At about 1030 hrs. I observed a white male approaching the railing in the courtroom. No one is permitted past this line without authorization from either the Judge or the bailiff's permission.

At this time I observed Deputy Sharon Lewis approach tile male and stop him from advancing any closer. I could see her speaking to the male. She, then approached me and stated that the subject had papers and he wanted to serve Judge Walker. Judge [W]alker was in the process of a pleading. I approached the male and stated that due to security reasons he could not approach the judge at this time. I could see that this clearly agitated the subject. He began raising his voice and I ordered him be qui[e]t and sit down or exit the courtroom. I informed him he was interrupting daily activities. He informed me that I could not stop him from approaching the judge.

By now I became fearful for the safety of the court and asked the male subject to step outside the courtroom. He said I could not order him outside. I gave him another command to exit the courtroom and again he refused to leave. I attempted to explain to him that he could not disrupt these proceedings. The subject again stated I could not have him leave the courtroom. At this time I informed the subject that he was under arrest. I reached to take control of the subject and place handcuffs on him. He pulled away from [me] and stated that I had no authority to put my hands on him. By this time his voice became excessively loud, to the point that the court proceedings stopped. By now Deputies Lewis and Barker observed me struggling [with] the subject and came to my aid in placing the subject into handcuffs.

37

> The subject was then identified as Stephen Hartman. He was taken to the inmate holding cell. He was transported to the Jefferson County Correctional Facility by the Sheriff's transport division.

The remaining exhibits attached to Judge Walker's motion provide more support for his argument. Yet the information in Broussard's affidavit and in Judge Walker's declaration by themselves shifted the burden of proof to Hartman to respond with summary-judgment evidence raising an issue of material fact to show that Judge Walker initiated or procured Joe Alford's decision charging Hartman with a crime.

Hartman argues that his summary-judgment evidence is sufficient to show that a fact issue exists on his claim that Judge Walker procured Alford's decision to prosecute Hartman for disturbing the proceedings in his court. Certainly, Hartman pleaded that Walker was plotting with his bailiffs to have Hartman arrested if he appeared and attempted to serve the judge with a summons. Yet Hartman never presented any *evidence* supporting that claim. Hartman says his pleadings should count. But pleadings are nothing more than allegations about what a party intends

to prove at trial. When contested as here, pleadings are not *evidence* of a party's claims.[51]

Thus, Hartman needed to present *evidence* that Joe Alford's decision to charge him with a crime would not have been made but for false information supplied to Alford or to the police by Judge Walker.[52] Yet none of the evidence Hartman attached to his response shows Judge Walker provided anyone with any information after Hartman's arrest, including any information that was false.

Next, Hartman points us to indictments of some of the deputies who were involved in the investigation, indictments that were based on the deputies alleged mishandling of evidence after Hartman's arrest. Hartman acknowledges that the indictments against these deputies were dismissed. Still, Hartman argues the indictments show the affidavits by the deputies that Walker relied on are unreliable.

---

[51]*See Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 543 (Tex. 1971) ("Pleadings simply outline the issues; they are not evidence even for summary judgment purposes.").

[52]*King v. Graham*, 126 S.W.3d 75, 78 (Tex. 2003) (per curiam) (explaining that to prove malicious prosecution, the plaintiff has the burden to prove the prosecutor's or grand jury's decision to charge a defendant with an offense "would not have been made but for the false information supplied by the defendant").

In a criminal case, a person's indictment is not evidence of the defendant's guilt. Traditionally, juries are instructed in a criminal case that "the indictment is not evidence of guilt."[53] In a civil case alleging malicious prosecution, the only relevance of the plaintiff indictment is to prove that the plaintiff's prosecution has ended—the indictment is not relevant for any other purpose.[54] As to the indictments Hartman relies on, Hartman concedes that none resulted in convictions. And in civil cases, with exceptions not applicable here, only final felony convictions are admissible as evidence in a civil case.[55] Thus, the indictments Hartman points to don't raise an issue of material fact on whether Walker was involved in procuring Joe Alford's decision to prosecute Hartman for a crime.[56]

The remaining exhibits Hartman attached to his response also fail to show that Judge Walker provided any information to anyone involved

---

[53]*See* State Bar of Tex. Criminal Pattern Jury Charges: The General Charge § 2.1 (General Principles) (2018); *Beal v. State*, 520 S.W.2d 907, 911 (Tex. Crim. App. 1975); *Hall v. State*, 150 S.W.2d 404, 407 (Tex. Crim. App. 1941).

[54]*See Equitable Life Assur. Soc'y of United States v. Lester*, 110 S.W. 499, 502 (Tex. Civ. App. 1908, no writ).

[55]Tex. R. Evid. 803(22)(A).

[56]*See Hidalgo*, 462 S.W.2d at 543.

in Hartman's investigation, fail to show that he spoke to any witnesses about their testimony, and fail to show that Judge Walker provided any information to Joe Alford, the acting attorney who decided to charge Hartman with a crime. We address the exhibits Hartman points to in his brief in turn: (1) the Reporter's Record from the proceedings of the plea hearing that Judge Walker was conducting when Hartman was arrested; (2) the recording from the pen recorder, which Hartman carried into the courtroom; (3) the affidavit of James Makin; (4) the affidavit of Joel Vazquez; (5) the affidavit of Rife Kimler; and (6) the sworn statement of Diane Rojas, the office manager for Allied Bail Bonds.

The Reporter's Record of the hearing on the plea Judge Walker was conducting when Hartman came into the 252nd District courtroom simply doesn't support Hartman's theory that Judge Walker was involved in ordering Hartman's arrest. Instead, the Reporter's Record is consistent with the affidavits of Deputy Broussard and Hartman, which both show Deputy Broussard told Hartman that he had to leave the courtroom or "you're going under arrest." Despite the fact the record continues for another page after that occurred, given Walker's evidence that he had no contact with Alford and no input into the investigation

41

conducted by police, nothing in the Reporter's Record shows that Joe Alford's decision to charge Hartman would not have been made but for information he obtained from someone directly or indirectly through Judge Walker.

Likewise, we find nothing in the affidavits of Makin, Vazquez, and Kimler, the three attorneys who were present in Judge Walker's courtroom, to support Hartman's malicious prosecution claim. Instead, the affidavits from these attorneys reflect that none of them were influenced by anyone to provide false testimony about what they saw occur in the courtroom of the 252nd District Court. None of the statements reflect the attorneys had opinions about whether Hartman should (or should not) be prosecuted for what he did, and none of the attorneys expressed an opinion about whether Hartman committed a crime.

The sworn statement from Diane Rojas, which was taken July 2015, reflects that Rojas was working as the office manager of Allied Bail Bonds when she spoke to Hartman while in the hallway outside the 252nd District Court. She stated she knew Hartman because he was formerly employed by Allied Bail Bonds. According to Rojas, she spoke to Hartman

about ten minutes before he went into the courtroom. In her statement, Rojas said Hartman told her that "he was going to try to serve Judge Walker papers pertaining to whatever lawsuit it was regarding, which [she could no longer recall]." Rojas also said that she never spoke to Judge Walker about Hartman's arrest. Thus, like Hartman's other evidence, it offers no facts to show that Judge Walker had anything whatsoever to do with procuring Hartman's prosecution for disturbing the proceedings in the 252nd District Court.

To sum it up, after years of litigation in state and federal court, Hartman failed to provide the trial court with any evidence to show that Judge Walker procured Joe Alford's decision to charge Hartman with a crime. Because Hartman did not meet his burden of proof, we hold the trial court did not err in rendering a take-nothing judgment in Judge Walker's favor on Hartman's malicious prosecution claim.[57]

We need only briefly address Hartman's civil conspiracy claim. Among other things, proving a claim of civil conspiracy requires proof

---

[57]*M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (explaining that subjective beliefs about whether a discriminatory purpose motivated the hospital's decision to terminate an employee were "insufficient to overcome [the hospital's] summary judgment evidence").

that the persons involved reached a "meeting of the minds on the object or course of action."[58]

Hartman argues that the circumstantial evidence in the exhibits he attached to his summary-judgment response is enough to allow a jury to infer that Judge Walker was responsible for the wrongful conduct of the court personnel assigned to his courtroom, including Deputy Broussard. His theory is that Judge Walker is responsible for the court personnel assigned to his courtroom because he is the "boss in the courtroom." Based on this theory, for which he cites no authority, Hartman argues a jury could reasonably believe that Judge Walker was responsible for Deputy Broussard's filing a false (Hartman claims) probable cause affidavit in which he claimed that Hartman raised his voice in the courtroom when that claim was false. Hartman also claims that the jury could have attributed other misconduct made by those assigned to Judge Walker's staff to Walker as their "boss," including the various officers involved in handling Hartman's arrest and the investigation into his arrest. Hartman contends the conspiracy that infected the investigation went beyond Judge Walker's courtroom, but nonetheless he theorizes

---

[58]*Parker*, 514 S.W.3d at 222.

that a jury could infer that since Judge Walker was the boss, he played a role in manipulating the facts to make it appear that Hartman was guilty of having committed a crime. Hartman concludes that a jury could reasonably find that Judge Walker's assigned staff, including those like Deputy Broussard, could be found to have been "acting on behalf of, and at the request of Walker" and acting together "as part of the civil conspiracy."

As a practical matter, Hartman's "boss-in-the-courtroom" theory would make judges liable for whatever torts those assigned to a courtroom might commit. Yet clearly Hartman's theory is based on a claim of agency, since it essentially seeks to make judges responsible for the acts of staff assigned by a county to work in a judge's courtroom, even though the employees working in the courtroom typically, as here, are employed by the county, not by the judge. As to Hartman's agency theory, we note that Hartman alleged (and sued) Jefferson County as the employer of twenty-two Jefferson County employees he sued, including Deputy Broussard. Hartman alleged that the County, as their employer, was responsible for their acts. Hartman never alleged that any of these

twenty-two Jefferson County employees, including Deputy Broussard, were employed by Judge Walker.[59]

We recognize, of course, that a judge in a courtroom may instruct bailiffs assigned to work in a court how to discharge their responsibilities while court is in session. That said, except for Deputy Broussard's statement in his probable cause affidavit to the effect that without the judge's or a bailiff's permission no one may go past the courtroom's rail, we find nothing else in the record to show what procedures Judge Walker expected his bailiffs to follow in his courtroom. And here, we have no evidence in the appellate record that shows Judge Walker created a rule requiring a person to immediately be arrested and charged with a crime should that person pass the rail without the bailiff's permission or raise their voice. There is also no evidence that Judge Walker met with deputies and instructed them to arrest Hartman if he appeared in court

---

[59]In an interlocutory appeal in this same case in which we dismissed Hartman's claims against Deputy Broussard for lack of jurisdiction, we held: "Hartman's decision to sue both [Deputy] Broussard individually and his employer, Jefferson County, triggered [Texas Civil Practice and Remedies Code Section 101.106] subsection (a)'s election of remedies [provision,] which bars suit against an employee in his individual capacity." *Broussard*, 2020 Tex. App. LEXIS 1062, at *10 (cleaned up).

and tried to serve Walker with a summons while the judge was on the bench.

As Hartman tells it, he never passed the rail, never raised his voice, and Alford charged him with a crime based on false information that Alford was given by the authorities, sheriff's deputies and investigators from the Jefferson County District Attorney's Office who were involved in the investigation of Hartman's arrest. Regardless of whether Hartman was falsely charged, an issue we need not decide, there is no evidence in this record to refute Judge Walker's summary-judgment evidence that he didn't instruct Deputy Broussard to arrest Hartman, didn't speak to the authorities who investigated Hartman arrest, and never spoke to the acting district attorney, Joe Alford, who made the decision to charge Hartman with disturbing the proceedings in the 252nd District Court.

Absent evidence proving that Judge Walker met with, discussed, and agreed on an object or course of action to have Hartman prosecuted, we conclude Hartman failed to provide the trial court with evidence sufficient to raise a genuine issue of material fact on his civil conspiracy claim. Having reviewed Hartman's arguments supporting his first issue,

47

we conclude they lack merit. For the reasons explained above, Harman's first issue is overruled.

## II. Issue Two

### A. *Did the trial court err in granting the motion for summary judgment filed by Makin, Vazquez, and Kimler?*

In his second issue, Hartman argues the trial court erred in granting the motions for summary judgment filed by Makin, Vazquez, and Kimler and ordering his claims against them dismissed.[60] He argues that since they provided police with witness statements before he was indicted or formally charged, they were not immune from suit on his malicious prosecution and civil conspiracy claims. In his Fifth Amended Petition, Hartman alleged the three attorneys provided the detectives who questioned them false information, which led to his prosecution. According to Hartman, the trial court erred in relying on the absolute-witness privilege in granting their respective motions for summary judgment.

The trial court granted the motions for summary judgment filed by Makin, Vazquez, and Kimler in three interlocutory orders, signed on

---

[60]The trial court's orders granting these three motions are interlocutory, and they were all signed on February 4, 2021.

February 4, 2021. On March 26, 2021, Hartman filed his Sixth Amended Petition, his live pleading in this suit.

Turning to the allegations in Hartman's Sixth Amended petition, he referred to the more than twenty defendants dismissed by interlocutory orders filed before March 26—a group that included Makin, Vazquez, and Kimler—as the "now-dismissed Defendants[.]" In his Sixth Amended Petition, Hartman also sought to recover damages solely against Judge Walker. Finally, when Hartman listed the parties whom he was naming as defendants in his Sixth Amended Petition, he named just one defendant: "Defendant Layne Walker[.]" In his prayer, Hartman asked the trial court to enter judgment against the "Defendant." In the first sentence of his Sixth Amended Petition, Hartman defined defendant as: "Plaintiff, Stephen Hartman, files Plaintiff's Sixth Amended Original Petition, complaining of Layne Walker, Defendant[.]"

In his brief, Hartman argues the trial court erred in granting summary judgment for Makin, Vazquez, and Kimler in February 2021. Under the rules of civil procedure, an amended pleading supersedes all previous pleadings.[61] Thus, when Hartman amended his petition in

---

[61]Tex. R. Civ. P. 65.

March 2021 and omitted all parties from his suit except for Judge Walker, he effectively abandoned the claims in his earlier petitions against other defendants, including the claims he had filed against Makin, Vazquez, and Kimler.[62]

We find nothing in Hartman's pleadings that shows he intended to reserve his right to reassert his claims against Makin, Vazquez, or Kimler, or to argue the trial court erred in granting their motions for summary judgment.[63] Had Hartman wanted to preserve his claims against these three defendants, he could have done so by filing a supplemental petition rather than by amending his petition.[64]

---

[62]*See F.K.M. P'ship, Ltd. v. Bd. Of Regents of Univ. Of Houston Sys.*, 255 S.W.3d 619, 632-33 (Tex. 2008) (filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims when the pleading is filed); *Chamberlain v. McReight*, 713 S.W.2d 372 (Tex. App.—Beaumont 1986, writ ref'd n.r.e.) ("The filing of an amended petition omitting an individual as a party-defendant has the effect of dismissing such party the same as if an order had been entered.").

[63]*F.K.M. P'ship, Ltd.* 255 S.W.3d at 633 (observing that to avoid waiver, a party may specifically state it is preserving its right to appeal from a prior ruling in an amended pleading and reserve its right to appeal).

[64]Tex. R. Civ. P. 69; *see Pipes v. Hemingway*, No. 05-13-00428-CV, 2014 Tex. App. LEXIS 4061, at *4 (Tex. App.—Dallas Apr. 14, 2014, pet. denied) ("Had Pipes filed a supplemental pleading, instead of an amended pleading, his claims against these defendants would have been preserved.").

For the reasons explained above, we conclude that as to Makin, Vazquez, and Kimler, Hartman may not now argue the trial court's final judgment, signed in April 2021, is improper. Hartman voluntarily dismissed these three defendants from his suit by not naming them as defendants in his Sixth Amended Petition.[65] We overrule Hartman's second issue.

## Conclusion

Because we agree with the trial court that Hartman didn't meet his burden of proof on his malicious prosecution and civil conspiracy claims, we hold the trial court properly granted Judge Walker's motion for summary judgment. And because Hartman voluntarily dismissed his claims against Makin, Vazquez, and Kimler before the trial court signed a final judgment, Hartman may not now complain that the judgment disposed of his claims against parties that he chose to voluntarily dismiss.

---

[65] *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam); Tex. R. App. P. 44.1.(a)(1).

51

We hold that Hartman has not established the trial court erred in rendering judgment granting Judge Walker's motion for summary judgment. The trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 14, 2022
Opinion Delivered August 17, 2023

Before Golemon, C.J., Horton and Wright, JJ.